UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| EVERETT XAVIER BROCKINGTON, ) | Civil Action No. 2:23-cv-3376-MGL-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| V.A. EMPLOYEE KATHERINE ) | |
| WALTER, DET. DAREYL W. ) | |
| STARK, LT. McDONALD, JOSEPH ) | |
| LEE COOK, U.S. GOVERNMENT, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**I.     INTRODUCTION**

Plaintiff, who is proceeding pro se, brings this action alleging various wrongs in connection with his treatment at two different Veterans Affairs Medical Centers. Presently before the Court is Defendants' Motion to Dismiss (ECF No. 49) Plaintiff's Amended Complaint. Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion could result in the motion being granted and his claims dismissed. Plaintiff filed a Response (ECF No. 52), Defendants filed a Reply (ECF No. 53, and Plaintiff field a Sur Reply (ECF No. 54). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(e), DSC. This report and recommendation is entered for review by the District Judge.

**II.     FACTUAL ALLEGATIONS**

Plaintiff's factual allegations are difficult to follow. He has sought medical care at both the William Jennings Bryan Dorn Veterans Affairs Medical Center (the "Columbia VA") located in

Richland County, and also at the Ralph H. Johnson Department of Veterans Affairs Medical Center (the "Charleston VA") in Charleston County. ECF No. 47-1, pp. 18-19. He alleges that Defendants "acted under color of law with indifference" to his heart issues and did not take him to the emergency room, but instead put a "behavior ban flag" on his hospital record, which worsened his depression. Am. Compl. p. 3 (ECF No. 47). He further alleges all Defendants fabricated a story of him grabbing other veterans, Defendant Cook threatened him while he was recovering from heart surgery by stating that he was over paid $3,000 for travel pay. Am. Compl. p. 7.

Plaintiff attaches to his Amended Complaint a copy of the administrative claim he filed with the Department of Veterans Affairs tort law group, as well as the agency denial of that administrative claim. Am. Compl. Supp. pp. 16-21 (ECF No. 47-1). On the continuation page for his SF-95 form, Plaintiff states that he went to the Charleston VA on July 15, 2021, and that he was illegally detained and later forced off the location after complaining of chest pains. Am. Compl. Supp. p. 17. He further states that the named Defendants detained him under false pretenses of grabbing veterans and making derogatory statements about the travel staff. Am. Compl. Supp. p. 5. Plaintiff appears to allege that the motivation for the violation of his civil rights was that he had witnessed fraud in the form of back travel pay being offered to a veteran. Am. Compl. Supp. p. 18. Plaintiff also describes a dispute with the Veterans Affairs travel office over travel costs for his travel to Charleston for phototherapy appointments. Am. Compl. Supp. pp. 18, 84-87. Plaintiff alleges he suffered mental anguish, defamation of his character, disfigurement bags under his eyes from lack of sleep, future lost wages, and loss of enjoyment of life as a result of Defendants' actions. Am. Compl. p. 7.

In 2021, Defendant Lee Cook was Chief of Patient Administration at the Charleston VA. Am. Compl. p. 2. Defendant Katherine Walter was the Disruptive Behavior Clinical Coordinator at the

Charleston VA. Defendants Deputy Chief Dareyl Stark and Lt. McDonald were both part of the VA Police. Compl. pp. 2-3 (ECF No. 1).

Plaintiff alleges violations of his civil rights, including an illegal detention and deliberate indifference to his medical needs as well as negligence, medical malpractice, defamation and discrimination.

### III.     STANDARD OF REVIEW

Defendants move to dismiss this case pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Motions filed pursuant to Rule 12(b)(1) challenge the court's subject matter jurisdiction.  A challenge to a plaintiff's standing "implicates th[e] court's subject matter jurisdiction." Long Term Care Partners, LLC v. United States, 516 F.3d 225, 230 (4th Cir. 2008); accord White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005). Generally, the burden of proving subject-matter jurisdiction is on the plaintiff, the party asserting jurisdiction. See Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); Frank Krasner Enterprises, Ltd. v. Montgomery Cty., 401 F.3d 230, 234 (4th Cir. 2005) ("The burden of establishing standing to sue lies squarely on the party claiming subject-matter jurisdiction."). In evaluating a defendant's challenge to subject matter jurisdiction, the Court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id.

A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949,

173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003).

### IV. DISCUSSION

#### A. Federal Tort Claims Act

Defendants first argue that any claim Plaintiff may allege under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq., is only proper against the United States. 28 U.S.C. § 2679(a), (b). Thus, any FTCA claims asserted against individual federal employees must be dismissed. 28 U.S.C. § 2679(a), (b)(1); Seridan v. Reidell, 465 F. Supp. 2d 528, 531 (D.S.C. 2006) ("A claim under the FTCA lies only against the United States itself, as the court has no jurisdiction to hear claims asserted against federal agencies or individual federal employees."). Accordingly, Plaintiff's

FTCA claim(s) against the individual Defendants other than the United States must be dismissed.[1]

Plaintiff appears to allege a defamation/libel claim arising from the behavior ban flag placed on his VA medical records. Am. Compl. p. 3; Am. Compl. Supp. pp. 2, 10, 19. However, Plaintiff's claims for defamation and libel are barred by § 2680(h) of the FTCA. Specifically, section 2680(h) excepts from the FTCA waiver of sovereign immunity: "Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights…." 28 U.S.C. § 2680(h); see Talbert v. United States, 932 F.2d 1064, 1067 (4th Cir. 1991) (finding defamation claim barred under section 2680(h) libel and slander exception to the FTCA); Perrodin v. United States, 350 F. Supp. 2d 706, 708 (D.S.C. 2004) ("[I]f a plaintiff sues the government for defamation under the FTCA, that claim would be barred[.]"); Pembleton, v. Kendall, C.A. No. 3:22-3989-MGL, 2024 WL 340778 (D.S.C. Jan. 30, 2024) (finding defamation claim fell within the libel and slander exception to the FTCA waiver of sovereign immunity). Thus, Plaintiff's defamation/libel cause of action should be dismissed.

In the supplement attached to Plaintiff's Amended Complaint, Plaintiff raises a medical malpractice claim and states "I was diagnosed with Rickets in 2020. It only took the VA 32 years to diagnose and they still have not told me what causes it. Am. Compl. Supp. p. 1. However, Plaintiff did not raise the failure to diagnose rickets in his SF-95[2] form. An administrative claim

---

[1] In his response, Plaintiff asserts "I am not suing under the FTCA. This is a color of law . . . . ." Pl. Resp. p. 2 (ECF No. 52). However, in the supplement attached to his Amended Complaint, he refers the the FTCA. Therefore, out of an abundance of caution, the undersigned will first address his claims as if they have been raised under the FTCA.

[2] Administrative claims under the FTCA must be filed on a "Standard Form 95." Bach v. United States Gov't, No. 4:13-3503-MGL-KDW, 2014 WL 12543902 (D.S.C. Mar. 7, 2014).

must first be filed with the appropriate federal agency before commencement of a civil action in a district court under the FTCA. See 28 C.F.R. § 14.2; 28 U.S.C. § 2401(b). Such requirement is jurisdictional and not waivable. Kokotis v. U.S. Postal Service, 223 F.3d 275, 278 (4th Cir. 2000). Because Plaintiff did not include a failure to diagnose rickets in his administrative claim, he is barred from raising it here. Thus, dismissal of his medical malpractice claim is proper.

Plaintiff also mentions negligence in his Amended Complaint, though it is not entirely clear what his allegations are in that respect. He states "Defendants acting under the color of law with indifference to my handicap (heart issues) and did not take me to the emergency room and put a behavior ban flag on my hospital record which worsen my depression. Negligence within the scope of employment." Am. Compl. p. 3. He also states "negligence in detaining me with my medical history because I witness travel pay fraud." Am. Compl. p. 7.

In South Carolina, "[t]o establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." Bloom v. Ravoira, 529 S.E.2d 710, 712 (S.C. 2000). "Liability encompasses all elements of a negligence claim, including damages proximately caused by the alleged negligence." Hinds v. Elms, 595 S.E.2d 855, 857 (S.C. Ct. App. 2004). Absence of even one of these elements renders the action insufficient. S.C. State Ports Auth. V. Booz-Allen & Hamilton, Inc., 346 S.E.2d 324, 325 (1986). "Negligence is not actionable unless it is the proximate cause of [an] injury." Midland Mortg. Corp. v. Wells Fargo Bank, N.A., 926 F. Supp. 2d 780, 787 (D.S.C. 2013) (citing Bishop v. S.C. Dep't of Mental Health, 331 S.C. 79, 502 S.E.2d 78, 83 (1998)); see also Wickersham v. Ford Motor Co., 853 S.E.2d 329, 332 (S.C. 2020) (noting that "proximate cause" is the opposite of "remote cause").

There are insufficient allegations in the complaint to show that Plaintiff suffered an injury proximately caused by detaining him, placing a behavior ban on his record, and not taking him to the emergency room.  Therefore, dismissal of his negligence cause of action is appropriate.

To the extent Plaintiff is attempting to bring claims of constitutional violations under the FTCA, those claims fail. The FTCA does not create an independent cause of action; it instead allows plaintiffs to hold the United States liable where a private individual would be liable under similar circumstances for state law tort in the relevant jurisdiction. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Federal constitutional torts are not cognizable under the FTCA. FDIC v. Meyer, 510 U.S. 471, 478 (1994) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right . . . . [T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.").

**B.      Bivens**

Because Defendants in this case are federal employees, Plaintiff's claims of a constitutional magnitude must be brought pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 390 (1971) to the extent that Bivens and its progeny allow for such claims. In 42 U.S.C. § 1983, Congress provided a specific damages remedy for plaintiffs whose constitutional rights were violated by state officials, but Congress provided no corresponding remedy for constitutional violations by agents of the Federal Government.  In Bivens, the Supreme Court first recognized, in the absence of statutory authority, an action for damages for individuals injured by FBI agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures.  Bivens, 407 U.S. at 397.  The Court found that there were no "special factors" that suggested the Judiciary should hesitate to recognize an action for damages absent congressional

authorization. Id. at 396-97.

Since Bivens, the Supreme Court has recognized a cause of action for a federal actor's violations of constitutional rights on two other occasions, a remedy for gender discrimination in violation of the Fifth Amendment's due process clause, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and a remedy for deliberate indifference to serious medical needs in violation of the Eighth Amendment, Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). "These three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." Ziglar v. Abbasi, 582 U.S. 120, 131, 137 S. Ct. 1843, 198 L. Ed. 2d 290 (2017).

Recently, the Fourth Circuit summarized the current climate regarding Bivens:

> Since these decisions [Bivens, Davis, Carlson] were handed down, the tide has turned against Bivens. "The [Supreme] Court has made clear that expanding the Bivens remedy to a new context is an extraordinary act that will be unavailable in most every case." Mays [v. Smith, 70 F.4th 198, 202 (4th Cir. 2023)]. And in the Supreme Court's most recent Bivens decision, Egbert v. Boule, 596 U.S. 482, 142 S.Ct. 1793, 213 L.Ed.2d 54 (2022), "the Supreme Court all but closed the door on Bivens remedies." Dyer v. Smith, 56 F.4th 271, 277 (4th Cir. 2022). It emphasized that "we have come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power.' " Egbert, 596 U.S. at 491, 142 S.Ct. 1793 (quoting Hernandez v. Mesa, 589 U.S. 93, 140 S. Ct. 735, 741, 206 L.Ed.2d 29 (2020)). Thus, the Egbert court asserted that "recognizing a cause of action under Bivens is 'a disfavored judicial activity,' " but chose not to dispense with Bivens altogether. Id. (quoting Ziglar v. Abbasi, 582 U.S. 120, 121, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017)).

Fields v. Fed. Bureau of Prisons, — F.4th — , No. 23-6246, 2024 WL 3529034, at *3 (4th Cir. July 25, 2024). In Egbert, the Supreme Court reiterated the analysis courts must undertake to determine whether a claim may proceed under Bivens:

> First, we ask whether the case presents a new Bivens context—i.e., is it meaningfully different from the three cases in which the Court has implied a damages action.

> Second, if the claim arises in a new context, a Bivens remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. If there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy.

Egbert, 596 U.S. at 492 (internal quotations omitted).

With respect to the first factor, to constitute a new context, a case need only be "different in a meaningful way from previous Bivens cases decided by th[e] [Supreme] Court." Ziglar, 582 U.S at 139. The Court's understanding of a new context "is broad," Hernandez, 140 S. Ct. at 743, and the analysis is "easily satisfied" even for claims that have "significant parallels" to one of the three previously recognized Bivens contexts, Ziglar, 582 U.S. at 149. The Supreme Court has counseled that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." Hernandez v. Mesa, 589 U.S. 93, 140 S. Ct. 735, 743, 206 L.Ed.2d 29 (2020). "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider." Ziglar, 582 U.S. at 139–40.

Plaintiff appears to raise two constitutional claims–unlawful detention and deliberate indifference to his medical needs. As stated above, Plaintiff's factual allegations are difficult to follow. In his SF-95, Plaintiff alleges that he "was illegally detained and later forced off the location after complaining of chest pains." Am. Compl. Supp. p. 17. In his Amended Complaint, Plaintiff

states that Defendants were negligent in detaining him due to his medical history. Am. Compl. 7.

Under Statement of Claim, Plaintiff further states

> All defendants fabricated a story of me grabbing veterans to cause mental anguish towards me. Deprivation [of] rights, privileges. Katherine Walter initiated a behavior flag that follow[s] me to every VA around the country. Joseph L. Cook threatens[ed] me while I was recovering from heart surgery (stents) that I was overpaid over $3,000 for travel pay when he in fact authorized it. Det. Stark and Lt. McDonald threaten[ed] to arrest me for assaulting veterans by grabbing them that they said that had footage on corroborated by Joseph Cook. I spent 4 days in the hospital and enclosed are some of the reports and e-mails. I believe the VA does not want me to figure out what [is] causing the rickets.

Am. Compl. p. 7. He further alleges,

> Defendants were aware that Plaintiff was medically disable[d] when they summoned the plaintiff in an isolated back hallway and detain while accusing plaintiff of grabbing random Veterans during [the] Covid 19 outbreak in 2021 and telling them negative information about the travel pay office.

Am. Compl. Supp. p. 5. He also states that he

> got detained by the defendants and taken to the VA police station to file a report and be escorted to the emergency room, [ ] was allowed to stay in the VA for my next appointment with the sleep apnea doctor. After the appointment I went back down to the VA police station feeling ill and was told to wait in the lobby for Lt. McDonald and Det. Stark to escort me to the emergency room.

Am. Compl. Supp. p. 11.

Defendants argue that both of these purported constitutional claims arise in new contexts. Importantly, as noted above the Supreme Court has made clear that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." Hernandez, 140 S. Ct. at 743. Plaintiff's unlawful detention claim falls under the Fourth Amendment's protections against unlawful search and seizure. "Although Bivens, too, was a Fourth Amendment case, '[c]ourts do not define a Bivens cause of

action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.' " Annappareddy v. Pascale, 996 F.3d 120, 135 (4th Cir. 2021) (quoting Cantú v. Moody, 933 F.3d 414, 422 (5th Cir. 2019)). The Fourth Circuit has repeatedly declined to recognize claims arising under the Fourth Amendment subsequent to Bivens because they arose in a new context. See, e.g., Dyer v. Smith, 56 F.4th 271, 275 (4th Cir. 2022)(declining request to extend Bivens to claims against Transportation and Security Administration officers for violations of the First and Fourth Amendments); Annappareddy v. Pascale, 996 F.3d 120, 126 (4th Cir. 2021)(declining to extend Bivens to claims against federal prosecutors and investigators for violations of the Fourth and Fifth Amendments); Tun-Cos v. Perrotte, 922 F.3d 514, 517-18 (4th Cir. 2019)(declining to extend Bivens to claims of unlawful searches and seizures by Immigration and Customs Enforcement agents in violation of the Fourth and Fifth Amendments).

Here, Plaintiff's claim for unlawful detention arises in a new context. The Fifth Circuit has addressed an attempt to pursue a Bivens claim under the Fourth Amendment against VA Police Officers. Oliva v. Nivar, 973 F.3d 438 (5th Cir. 2020). The claims in Oliva arose when the plaintiff visited a VA hospital and ended up in a physical altercation with a VA Police Officer, who wrestled the plaintiff to the ground and arrested him. Id. at 440. The plaintiff raised excessive force and unreasonable seizure claims. Id. at 441. The Fifth Circuit found that the district court erred in holding that the plaintiff's claim did not arise in a new context, and noted that the case differed from Bivens in "several meaningful ways":

> This case arose in a government hospital, not a private home. Cf. Bivens, 403 U.S. at 389, 91 S.Ct. 1999. The VA officers were manning a metal detector, not making a warrantless search for narcotics. Cf. ibid. Judicial guidance varies across these

> contexts. See Cantú, 933 F.3d at 423 ("'Judicial guidance' differs across the various kinds of Fourth Amendment violations—like seizures by deadly force, searches by wiretap, Terry stops, executions of warrants, seizures without legal process ('false arrest'), seizures with wrongful legal process ('malicious prosecution'), etc."). The dispute that gave rise to Oliva's altercation involved the hospital's ID policy, not a narcotics investigation. Cf. Bivens, 403 U.S. at 389, 91 S.Ct. 1999. The cases thus involve different legal mandates. Cf. Loumiet v. United States, 948 F.3d 376, 382 (D.C. Cir. 2020) (Katsas, J.) (contrasting enforcement of federal banking laws with enforcement of federal narcotics laws in new-context analysis). The VA officers did not manacle Oliva in front of his family or strip-search him. Cf. Bivens, 403 U.S. at 389, 91 S.Ct. 1999. Contrariwise the narcotics officers did not place Webster Bivens in a chokehold. See ibid. In short, Oliva's "claim involves different conduct by different officers from a different agency." Cantú, 933 F.3d at 423. We could go on, but the point should be clear: the context is new.

Id at 442–43. Likewise in the present case, Plaintiff claim arose in a government hospital, not a private home, and involved Plaintiff's alleged conduct towards other visitors at the hospital rather than a search for narcotics. The VA Police Officers detained Plaintiff but did not handcuff him or strip search him. As in Oliva, Plaintiff's "claim involves different conduct by different officers from a different agency." Id. This is more than enough to show that the context presented here is new.

Therefore, because Plaintiff's unlawful detention claim against VA Police Officers arises in a new context, the court must next determine whether any special factors exist "indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. If there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy." Egbert, 596 U.S. at 492 (internal quotations omitted). As the Supreme Court has noted, "for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under Bivens." Hernandez, 589 U.S. at 102.

In Tate v. Harmon, et al., 54 F.4th 839 (4th Cir. 2022), the Fourth Circuit discussed Egbert the framework. The court recognized the "critical condition of Bivens jurisprudence" and noted the

mandate from the Supreme Court that "courts are clearly warned to act with utmost hesitation when faced with actions that do not fall precisely under Bivens, Davis, or Carlson." Id. at 845. The court also stated that any uncertainty in whether "special factors" counsel hesitation in recognizing a Bivens remedy should be sufficient to resolve that issue in the affirmative, "[h]eeding the Supreme Court's warnings that courts should not be in the business of creating causes of action and that they must give the legislative branch 'utmost deference' in considering whether to do so." Id. at 848. As noted by the Supreme Court, "[w]hen evaluating whether to extend Bivens, the most important question 'is "who should decide" whether to provide for a damages remedy, Congress or the courts?'" Hernandez, 589 U.S. at 114 (quoting Ziglar, 582 U.S. at 135). The answer to that question is usually Congress. Id.

One special factor recognized by the Supreme Court is the existence of "any alternative, existing process for protecting the [injured party's] interest," Ziglar, 582 U.S. at 137 (citing Wilkie v. Robbins, 551 U.S. 537, 550, 127 S. Ct. 2588, 2597, 168 L. Ed. 2d 389 (2007)), which "alone may limit the power of the Judiciary to infer a new Bivens cause of action," id. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy." Egbert, 596 U.S. at 498. Defendants argue that Plaintiff has an alternative remedy in the FTCA. However, the Fourth Circuit recently rejected a similar argument in Fields, noting that the argument that the FTCA provides an alternative remedy that bars a Bivens claim is "foreclosed by the Supreme Court's decision in Carlson, where it stated that the FTCA 'contemplates that victims of the kind of intentional wrongdoing alleged in this complaint shall have an action under FTCA against the United States as well as a Bivens action against the individual officers.'" Fields, 109 F.4th at 275 (quoting

Carlson, 446 U.S. at 20, 100 S.Ct. 1468) (emphasis added in Fields); but see Oliva, 973 F.3d at 444 (finding the FTCA was an alternative remedy to the plaintiff's purported Bivens action against VA officials).

However, the increased burden it would place on VA operations for this court—or any court—to authorize a damages remedy in a context that deviates even slightly from Bivens, Davis, or Carlson, is a special factor that mitigates against recognizing a Bivens action in this new context. As Egbert explained, "Congress is far more competent than the Judiciary" to weigh policy considerations such as "economic and governmental concerns, administrative costs, and the impact on governmental operations systemwide" of implying a damages remedy. Egbert, 596 U.S. at 491. Indeed, "[e]ven in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under Bivens." Id. at 493 (quoting Ziglar, 582 U.S. at 136). "That uncertainty alone is a special factor that forecloses relief." Id. The judiciary is "ill-suited to 'predict the systemwide consequences of recognizing a cause of action under Bivens,'" Tate, 54 F.4th at 848, especially where no such cause of action has ever been recognized against VA officials. "[T]he absence of a remedy for a wrong is ordinarily for Congress to fix, not the courts." Id. at 847. Accordingly, Bivens should not be extended to provide a remedy in this new context.

Because Plaintiff's unlawful detention cause of action against the VA Police Officers arises in a new context, and special factors counsel against extending Bivens in this circumstance, dismissal of his claim is proper.

A similar analysis applies to Plaintiff's medical indifference claims. As mentioned above, the Supreme Court recognized a cause of action under Bivens for a claim arising under the Eighth Amendment for deliberate indifference to serious medical needs in Carlson, 446 U.S. at 19, 20. That

case involved an inmate within the Federal Bureau of Prisons (BOP), who was denied emergency treatment by BOP officials and ultimately passed away as a result of the alleged inadequate medical care. Id. at 17 n.1. Here, Plaintiff is not a convicted prisoner and, thus, his claim would not arise under the Eighth Amendment. Nor did Plaintiff's medical treatment through the VA otherwise arise in a custodial context. Further, Defendants are not BOP officials. These differences alone are sufficient to conclude that Plaintiff's medical indifference claims arise in a new context. However, further differences include the fact that Plaintiff was not denied emergent care by Defendants nor did any alleged denial of care result in any serious injury, much less death. Accordingly, because Plaintiff's claim arises in a new context, the court must determine whether special factors exist that would preclude recognizing a Bivens cause of action here.

For the same reasons discussed above with respect to Plaintiff's unlawful detention claim, recognizing a Bivens claim in this new context and against officials of a different federal agency would increase burdens placed on government operations, which counsels against an extension of Bivens to Plaintiff's medical indifference claim against VA officials. Accordingly, dismissal is appropriate.

**V.    CONCLUSION**

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss (ECF No. 49) be granted and this case be dismissed in its entirety.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

August 19, 2024  
Florence, South Carolina

**The parties are directed to the important information on the attached page.**